# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY FUENTES,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. CV 09-4120 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

　　　　Mary Fuentes ("Fuentes") filed this action on June 12, 2009. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on July 10 and 13, 2009. (Dkt. Nos. 8-9.) On February 11, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

# I.

## PROCEDURAL BACKGROUND

On July 20, 2006, Fuentes filed an application for disability insurance benefits alleging a disability onset date of April 6, 2006. Administrative Record ("AR") 12. The application was denied initially and upon reconsideration. AR 48-49. Fuentes requested a hearing before an Administrative Law Judge ("ALJ"). AR 62. On March 25, 2008, the ALJ conducted a hearing at which Fuentes and a vocational expert testified. AR 20-47. On September 23, 2008, the ALJ issued a decision denying benefits. AR 10-18. On April 9, 2009, the Appeals Council denied the request for review. AR 1-5. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada,* 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///
///
///

# III.

# DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found that Fuentes met the insured status requirements through December 31, 2007. AR 14.

Fuentes has the following severe combination of impairments: "arachnoid cyst of the posterior fossa with history of headaches and occasional syncopal episodes and mild degenerative changes in the cervical spine." *Id.* Through the date last insured, the ALJ found that Fuentes had the residual functional capacity to perform sedentary work "except occasional climbing, balancing, stooping, kneeling, crouching, or crawling, no exposure to hazards such [as] unprotected height and dangerous machinery, no exposure to temperature extremes, no production quota work such as assembly line or piece work, and no exposure to hypernoisy environments." AR 15.

The ALJ found that Fuentes was unable to perform her past relevant work. AR 17. However, "there were jobs that existed in significant numbers in the national economy that the claimant could have performed," such as information clerk, general office clerk, and credit checker. AR 17.

### C. Credibility

"To determine whether a claimant's testimony regarding subjective pain or

///

symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Fuentes' medically determinable impairments could reasonably be expected to cause her symptoms. AR 16.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

At the hearing, Fuentes testified that she takes one or two vicodin per day, depending on her pain tolerance. AR 24-25. She experiences paralysis on her left side at least twice per month, and Dr. Smith observed it. AR 26-27. She had about 14 or more episodes of paralysis over the last two years. AR 28. Her usual daily routine is to take her kids to school, clean a little bit, rest until her kids

come home so she can cook dinner and help with homework. AR 30. However, she is unable to perform even that routine approximately three days per week. AR 30-31. The pressure in her head makes her feel as though she has been hit with a baseball bat in the back of her head. It makes her vomit and shake, and is a ten on a scale of one to ten. AR 31. The only way to relieve the pressure is to rest and lie down with ice packs. AR 31, 37.

The ALJ found that Fuentes' statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC. AR 16. The ALJ discounted her credibility for three reasons: (1) the medical evidence did not support the intensity and frequency of Fuentes' headache and seizure-like symptoms of dizziness, tingling, convulsions, shaking, and blurred vision; (2) there was evidence of exaggeration of gastrointestinal symptoms; and (3) Fuentes did not have a good work history prior to the alleged onset date. AR 16.

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Shortly after breast surgery in March 2006, Fuentes presented with headache, chills, fever, nausea, vomiting, diarrhea, weakness, light intolerance and dizziness. AR 250-51. A CT on April 6, 2006, indicated Fuentes has an arachnoid cyst in the posterior fossa of the brain.[1] AR 395. During the period April–June 2006, the medical records indicate Fuentes was seen on six occasions for complaints of headache, facial numbness, tingling in arms, vomiting, and neck pain. AR 250 (4/5/06), 270-71 (4/25-26/06), 339

---

[1] In January 2009, a new cyst appeared for the first time. AR 8. The January 2009 date is well after the date last insured of December 31, 2007.

(5/4/06), AR 278-79 (5/5-6/06),[2] 289, 298-301 (6/2-3/06), 337-38 (6/2/06). On June 23, 2006, Dr. Boutros indicated Fuentes' headaches had "resolved" but she still had a feeling of "fluid in her head" and complained of postnasal drip. AR 335.

In July 2006, Dr. Spicer at UC San Diego evaluated Fuentes, who told him that the buildup of fluid in her head tends to drain down the back of her throat. AR 304. She had headaches on and off. *Id.* Dr. Spicer found "absolutely no evidence on the MRI images of structural defect which would allow such a leak to occur, although it would not be impossible for there to be a minute defect which would result in such pathology." AR 303. It is "extremely unlikely" that the cyst was responsible for any postnasal drip of cerebro-spinal fluid. *Id.*

After April–July 2006, the ALJ is correct that Fuentes' physical examinations do not indicate the same frequency or intensity of symptoms. On January 12, 2007, Dr. Linskey, a neurosurgeon at UC Irvine, noted Fuentes is "currently symptomatic from her cyst with signs and symptoms on exam with cerebellar findings present as well as oscillopsia and upgaze nystagmus." AR 372. He found Fuentes was currently "functioning at Karnofsky Performance Status 80."[3] AR 371. Her muscle tone and strength were normal, her gait was normal, and her facial function was normal. *Id.* Dr. Linskey felt her cyst "was likely in physiologic pressure and fluid balance until her most recent physiologic

---

[2] The May 5, 2006 visit occurred after Fuentes abruptly stopped taking vicodin and suffered migraine, nausea and tremors. AR 290.

[3] "The Karnofsky scale is a widely used performance scale, assigning scores ranging from 0 for a nonfunctional or dead patient to 100 for one with completely normal functioning." *Dorland's Illustrated Medical Dictionary* at 1660 (30th ed. 2003). A Karnofsky score of 70 indicates an inability to carry on normal activity, including work. *See Testaverde v. United States*, 2009 U.S. Dist. LEXIS 43901, *10 (E.D.N.Y. May 26, 2009). A score of 90 indicates minor symptoms and nearly normal functioning. *Johnson v. Astrue*, 2009 U.S. Dist. LEXIS 49998, *12 (W.D.N.Y. June 12, 2009). A score of 80 indicates normal activity with some difficulty, and some symptoms or signs of disease. *See* Robichaud, *Considering Innovative Alternatives to Handling Cases of Adults with Special Conditions Under the Social Security Act*, 29 Nat'l Ass'n L. Jud. 433, 465 (2009).

challenge of pelvic symptoms from the surgery."[4] AR 372. There is "no absolute guarantee that her symptoms are all related to her arachnoid cyst or would indeed improve with direct surgical treatment of her cyst." *Id.* However, Dr. Linskey favored a fenestration/resection of the cyst "in the hopes of empirically improving her symptoms." *Id.* In June 2007, a neurologist, stated Dr. Linskey's theory "makes sense and can potentially explain the patient's symptoms." AR 421.

In May 2007, emergency room medical records indicate Fuentes ate at a Jack in the Box the previous night and later felt increasing nausea and vomiting. She denied headaches. AR 456. The physician felt she may have had some food borne illness or virus. AR 457. She was discharged home in good condition. *Id.*

In June 2007, Fuentes was seen by a cardiologist who found her "very pleasant" and "appears comfortable." AR 438. In July 2007, Fuentes underwent a treadmill stress test which was negative. She was able to exercise 3 minutes and 12 seconds at a maximum heart rate of 159 without any chest pain. AR 441.

In September 2007, Fuentes had a normal neurological examination including mental status, cranial nerves, motor and sensory systems, deep tendon and superficial reflexes, and gait. AR 509. The neurologist, Dr. Smith, found no evidence of nystagmus. *Id.* Dr. Smith opined that the headaches are a result of "analgesic overuse syndrome" and advised that Fuentes stop taking vicodin (which she reported taking up to six tablets per day) and flexeril. *Id.*

In October 2007, Dr. Linskey stated Fuentes had decided against surgery and opted instead for "surveillance imaging and only intervening for symptom progression and/or lesion enlargement on MR." AR 423. Her physical and

---

[4] In a later note on October 5, 2007, Dr. Linskey explained that perhaps the cyst had "become decompensated in its fluid dynamics" as a result of her recent surgery. AR 423.

neurological examinations were unchanged. Dr. Linskey recommended that Fuentes see Dr. Cable, a neurologist at UC Irvine. AR 424.

In January 2008, Fuentes reported daily headaches and three syncopal episodes in the past year to Dr. Cable. AR 428-29. Fuentes presented as "physically well-looking" and "in no pain or distress." AR 430. The physical examination was normal. She had full range of motion, cranial nerves were normal with no nystagmus, motor and sensory examinations were normal, there was no tremor or ataxia in the arms and legs, and her gait was normal. AR 430-31. Dr. Cable ordered an electroencephalogram (EEG) to assess for seizure activity. AR 431. The subsequent EEG in February 2008 was normal. AR 434.

On June 27, 2008, Fuentes presented with decreased light touch in left lower face area, decreased sensation to vibration and light touch in the left lower extremity and decreased light touch in the left upper extremity. AR 522-23. She had an unstable walk. AR 522.

On August 6, 2008, Dr. Cable examined Fuentes at UC Irvine and noted that she is "physically well looking" and "in no pain or distress." AR 115. She did not appear anxious or depressed. AR 115. She had nystagmus "consistent with a medication effect." AR 115-16. She had a normal motor exam, with normal strength in the arms, hands, legs and feet. AR 116. "There is no sign of atrophy, fasciculation, or spasticity." *Id.* Her gait was normal, with no tremor or ataxia in the arms or legs. *Id.* She could kneel and squat normally both legs. *Id.* Dr. Cable was concerned that her chronic use of opiates together with caffeine[5] were contributing to her headaches. *Id.* Dr. Cable advised Fuentes not to drive until cleared by the DMV due to her reported syncopal episodes. *Id.*

Dr. Smith's DMV medical evaluation form dated September 2008 indicates Fuentes has an arachnoid cyst that causes headaches, impaired vision,

---

[5] Fuentes reported taking up to four tablets of vicodin per day and drinking up to six or seven glasses of iced tea per day.

8

moderate loss of motor control in the upper and lower extremities, and multiple blackouts since 2006, with the most recent occurring five months ago. AR 537-40. Dr. Smith listed the onset date as 2006. AR 539. The effects of blackouts include confusion, diminished concentration and memory loss. *Id.* This opinion does not address the frequency or intensity of symptoms. As the ALJ noted, Dr. Smith did not advise Fuentes not to drive and instead deferred to neurology.[6] AR 16, 537. Dr. Smith indicates Fuentes is being treated by a neurologist, Dr. Cable, for her arachnoid cyst. AR 537. The neurological medical records after April-July 2006 are not consistent with Dr. Smith's description of Fuentes' condition.

The Court cannot say that the ALJ's interpretation of the objective medical evidence is unsupported by substantial evidence. After the April–July 2006 time frame, Fuentes' physical and neurological examinations more often reflect minor symptoms. Whereas Fuentes testified that she has paralysis on her left side at least twice a month, there is no objective medical evidence of paralysis after the April–July 2006 time frame. There is evidence of decreased sensation on the left side and difficulty walking in June 2008 (AR 522-23), but her physical, neurological, motor, sensory and gait examinations on her other visits were normal.[7] When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523. However, this reason is alone insufficient to discount Fuentes' credibility.

The ALJ found evidence of symptom exaggeration based on Fuentes' heart evaluation in June/July 2007, her emergency room visit for gastrointestinal distress in May 2007, and medical records indicating Fuentes has been treated

---

[6] The medical records of neurologists and neurosurgeons observed motor weakness only once in 2008, and did not observe blackouts, confusion, diminished concentration or memory loss.

[7] *See* the medical expert's opinion. AR 517-18.

9

symptomatically for GERD with no indication of significant functional problems. AR 16. As noted above, in June 2007 Fuentes was seen by a cardiologist who found her "very pleasant" and "appears comfortable." AR 438. In July 2007, Fuentes underwent a treadmill stress test in which she was able to exercise 3 minutes and 12 seconds at a maximum heart rate of 159 without pain. AR 441. This evidence is inconsistent with Fuentes' subjective symptoms. The ALJ twice asked Fuentes how often she experiences the symptoms she described. AR 37. Although Fuentes did not answer the questions directly, she responded that "[t]he concentration and slurred speech happens every time there's too much pressure in my brain." "Pressure builds in it every day. It all depends on if you rest or not, whether you relieve the pressure or not." *Id.*

At the hearing, Fuentes testified that the pressure she feels in her head makes her "vomit all the time." AR 31. The ALJ noted that in May 2007, Fuentes went to an emergency room with nausea, vomiting and epigastrium pain after eating at Jack in the Box. AR 16, 456. Fuentes denied headaches, neck or back pain. *Id.* She was discharged with the symptoms resolved. AR 457. At the hearing, Fuentes testified that she lost 30 pounds when this first happened in 2006, but that she is back to her normal weight.[8] AR 36. The ALJ's finding of symptom exaggeration is supported by substantial evidence.

The ALJ found that Fuentes had not had a good work history, with low and irregular earnings. AR 16, 133-142. Fuentes testified she was a self-employed daycare provider for children during the period 1999-2006. AR 25. She took care of about eight children on a given day. AR 26. She loved her work, and still has the daycare set up in her home. AR 38-39. Fuentes explained she was off work for six months at the end of 2001 through the middle of 2002 because a cyst on

---

[8] Fuentes states that she loses the weight every summer. AR 36. The medical records indicate minimal fluctuation in weight. AR 424 (151 lbs. in 10/07), AR 430 (151 lbs. in 01/08), AR 522 (146 lbs. in 06/08), 115 (151 lbs. in 08/08).

10

her ovary ruptured during pregnancy, which required an emergency caesarean section and surgery to repair the ovary. AR 39-40. When asked about her earnings, Fuentes testified only that her earnings are low "because of [my] deductibles and all of that, on [my] tax records." AR 40.

The ALJ's credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 22, 2011

                              ALICIA G. ROSENBERG
                              United States Magistrate Judge